```
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              -  -  -

UNITED STATES OF AMERICA       :  CIVIL ACTION NO. 11-571
                               :
             v.                :  Philadelphia, Pennsylvania
                               :  June 26, 2012
WILLIAM W. WILSON,             :  10:36 o'clock a.m.
        Defendant              :
. . . . . . . . . . . . . . . :

                    CHANGE OF PLEA HEARING
              BEFORE THE HONORABLE TIMOTHY R. RICE
                 UNITED STATES DISTRICT COURT JUDGE


                              -  -  -

APPEARANCES:

For the Government:       ASHLEY LUNKENHEIMER, ESQUIRE
                          Assistant U.S. Attorney
                          615 Chestnut Street
                          Suite 1250
                          Philadelphia, PA  19106


For the Defendants:       PAUL M. MESSING, ESQUIRE
                          Kairys, Rudovsky, Messing
                          & Feinberg
                          718 Arch Street
                          Suite 501 South
                          Philadelphia, PA  19106

                              -  -  -

Audio Operator/ESR:       Sharon A. Hall

Transcribed by:           Paula L. Curran, CET

        (Proceeding recorded by The Record Player digital
sound recording; transcript produced by AAERT-certified
transcriber.)


                    Laws Transcription Service
                    48 W. LaCrosse Avenue
                     Lansdowne, PA 19050
                       (610)623-4178
```

2

1          (The following occurred in open court at 10:36

2    o'clock a.m.)

3          COURT CLERK:  All rise.

4          THE COURT:  Good morning, everyone.

5          ALL:  Good morning, your Honor.

6          THE COURT:  Mr. Messing.

7          MR. MESSING:  Good morning, your Honor.

8          THE COURT:  Ms. Lunkenheimer.

9          MS. LUNKENHEIMER:  Good morning, your Honor.

10          THE COURT:  Mr. Wilson, how are you?

11          THE DEFENDANT:  Okay.

12          THE COURT:  Please be seated.  Everybody knows

13    Sharon Hall, she's our court reporter today, so and you know

14    Kristen, who is well known to everyone.  These are my law

15    clerk, Tony and our summer clerk, Amanda, from Drexel, who

16    came to see the best and the brightest in action.  So it's

17    good to see all of you.

18          We're here for a guilty plea from Mr. Wilson, is

19    that correct, sir?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Does somebody want to swear Mr. Wilson.

22          WILLIAM W. WILSON, Defendant, Sworn.

23          MR. MESSING:  Would it be all right if he is seated,

24    your Honor?

25          THE COURT:  Oh, of course.  Wherever you're most

1   comfortable.  Yes, have a seat, sir.

2            THE DEFENDANT:  Thank you.

3            THE COURT:  All right, Mr. Wilson, I just wanted to

4   remind you that you are under oath.  If you answer any

5   questions falsely, your answer could later be used against

6   you in a prosecution for perjury or making a false statement.

7   Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Okay.  Now, I'm going to ask you a whole

10  bunch of questions today, just to determine if you're

11  knowingly and voluntarily entering a guilty plea, because

12  this is a pretty important decision you're making and I know

13  you have a very competent lawyer.  So if you don't understand

14  anything I'm asking or if you're confused by something and

15  you need a minute, just feel free to say so and you can speak

16  to Mr. Messing, if you want to.  So I don't want you to feel

17  like there is any pressure here.

18            THE DEFENDANT:  Thank you.

19            THE COURT:  Okay, all right.  Could you just give us

20  your full name and your age, please?

21            THE DEFENDANT:  William --

22            THE COURT:  You don't have to stand, sir, you can

23  just --

24            MR. MESSING:  Pull your chair in.

25            THE DEFENDANT:  William Wallace Wilson.

4

1          THE COURT:  Okay and how old are you?

2          THE DEFENDANT:  I'm 55.

3          THE COURT:  Oh, same age as me, excellent and how

4    far did you go in school?

5          THE DEFENDANT:  I'm not sure of the grade I quit.

6          THE COURT:  Okay.

7          THE DEFENDANT:  I was 15 when I quit high school.

8          THE COURT:  Okay, that's fine.  Did you get a GED or

9    anything?

10          THE DEFENDANT:  No, I didn't.

11          THE COURT:  Okay, it's not too late for that, you

12    know, there's all sorts of free programs and I can get you

13    into one, if you want to do that.

14          THE DEFENDANT:  Thank you.

15          THE COURT:  Now, let's talk about, I know you've had

16    some issues with narcotics, but have you ever been treated

17    for drug, alcohol addiction or mental illness?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay, why don't you tell me about that?

20          THE DEFENDANT:  I went to rehab once.  Boeing

21    Company sent me to rehab.

22          THE COURT:  When was that?

23          THE DEFENDANT:  10 years ago, somewhere around

24    there.

25          THE COURT:  Okay.

1          THE DEFENDANT:  And I've been having some depression

2     problems, which I'm seeing a doctor for that.

3          THE COURT:  Okay.

4          THE DEFENDANT:  That's been about four years, three

5     or four years.

6          THE COURT:  Okay and you are being treated for that

7     now?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right and are you taking any

10    medication?

11         THE DEFENDANT:  It's a generic for Zoloft.

12         THE COURT:  Okay.

13         THE DEFENDANT:  I can't pronounce the name of it.

14    It's Zoloft, that's it.

15         THE COURT:  That's all right, Zoloft, I understand.

16    Is any of the medication you're taking affect your ability to

17    make decisions or understand what's going on here today?

18         THE DEFENDANT:  No, not at all.

19         THE COURT:  Okay, Mr. Messing, do you have any

20    concerns on that front?

21         MR. MESSING:  I do not, sir.

22         THE COURT:  Okay, very well.  Now, are you feeling

23    all right today, sir?

24         THE DEFENDANT:  Yes, I am, thank you.

25         THE COURT:  All right, very good.  Can you hear and

1  understand me okay?

2          THE DEFENDANT:  Yes, sir, your Honor.

3          THE COURT:  Now, has Mr. Messing gone over the

4  charges against you and fully explained to you your trial

5  rights and the defenses you might bring?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  I know you didn't sign a

8  plea agreement, you're going to plead open, is that correct?

9          THE DEFENDANT:  Yes.

10         THE COURT:  There is no signed agreement?  All

11  right, so you voluntarily are agreeing to plead guilty?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  Do you feel you've had

14  enough time to speak to Mr. Messing about your case?

15         THE DEFENDANT:  Yes, everything's going fine, thank

16  you.

17         THE COURT:  Okay, so far, has he done everything

18  that you've asked him to do?

19         THE DEFENDANT:  Yes, he has.

20         THE COURT:  All right.  Other than your decision to

21  plead to the charges and appear for sentencing, has anyone

22  offered you anything else to get you to plead guilty?

23         THE DEFENDANT:  No.

24         THE COURT:  All right, do you understand that no one

25  can guarantee what sentence you will receive from me if you

1    do plead guilty?

2            THE DEFENDANT:  Yes, that was explained to me.

3            THE COURT:  Okay, did anyone use force, violence or

4    intimidation to get you to plead guilty?

5            THE DEFENDANT:  No, no, your Honor.

6            THE COURT:  And are you pleading guilty because of

7    your own free will?

8            THE DEFENDANT:  Yes, yup.

9            THE COURT:  Do you have any hesitation?

10           THE DEFENDANT:  No, I can't lie, you know, I was on

11   film, you know.  I don't want to lie either, you know.

12           THE COURT:  Okay, very good.  Did anyone tell you

13   today what to say or put words in your mouth?

14           THE DEFENDANT:  No, no.

15           THE COURT:  Do you understand that if you plead

16   guilty, you'll be adjudged guilty of a misdemeanor and that

17   that may deprive you of some civil rights?

18           THE DEFENDANT:  I understand that, yes.

19           THE COURT:  Okay and if you're not a U.S. citizen,

20   it could affect your ability to remain in the country?

21           THE DEFENDANT:  I understand.

22           THE COURT:  Have you ever in the past, been on court

23   supervision for probation, parole or supervised release?

24           THE DEFENDANT:  No, I haven't.

25           THE COURT:  All right, Ms. Lunkenheimer, could you

1    give the maximum and penalties that Mr. Wilson faces?

2              MS. LUNKENHEIMER:  Yes, your Honor.  If convicted of

3    the single count charged in the information of attempted

4    possession of Oxycodone, the maximum sentence the defendant

5    would face would be a maximum of one year in prison, a

6    maximum of one year of supervised release, a $1,000 fine and

7    a $100 special assessment.  The defendant also needs to

8    understand that if supervised release is imposed and its

9    terms and conditions are violated, the defendant can face an

10   additional period of incarceration without any credit for

11   time served.  In this case, that would be up to one year

12   imprisonment for the single count of conviction.

13             THE COURT:  Very good.  Sir, do you understand those

14   are the maximum penalties that you could receive?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  All right, very good.  Now, do you also

17   understand that this offense is covered by what we call the

18   sentencing guidelines and that I'm required to consider those

19   guidelines in fashioning an appropriate sentence for you?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right, a probation officer is going

22   to be assigned to prepare a report, basically summarizing

23   your background and your history and your life and the nature

24   of this offense.  And that's going to set forth also a

25   sentencing guideline range.  If you or the prosecution

1   disagree with that, you're entitled to make objections, but

2   just because you object doesn't mean I have to accept your

3   objections and I have to make my own independent finding on

4   what the guideline range will be.

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  All right.  It's my understanding that

7   the type of drugs involved in this case, it's going to be an

8   offense level of six?

9           MS. LUNKENHEIMER:  Your Honor, as the Court was

10  about to say, the sentencing guidelines have a base offense

11  level for this particular charge and it's not keyed off of

12  the actual quantity of drugs.  And so, in this case, it would

13  be a Level 8.

14          THE COURT:  Level 8, okay, very good.  Do you

15  understand that there is no parole in the federal system

16  anymore.  If you were sentenced to prison, you would have

17  serve the full term of that sentence.

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right, do you understand also that

20  you can appeal your sentence to a higher court, which could

21  modify or set aside the sentence or order me to re-sentence

22  you and the Government would also have those appellate

23  rights?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Now, there are certain constitutional

1   rights that I want to explain to you and let me start with

2   the most important one, that you're presumed innocent and as

3   you sit here today, you are presumed innocent of this

4   offense.  And unless and until the Government proves you

5   guilty, beyond a reasonable doubt, that presumption remains.

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Do you understand that you have a right

8   to the assistance of an attorney at every stage of the

9   proceedings, including trial, before trial, after trial and

10  for any appeals and if you couldn't afford an attorney, one

11  would be appointed for you?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you understand that you have a right

14  to plead not guilty and persist in that plea and have your

15  case tried either to a jury of 12 or to a judge sitting

16  alone?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Do you also understand that I'm a

19  Magistrate Judge, you have a right to your case heard by a

20  District Court Judge and that you've agreed to have the case

21  by me and resolved by me?

22          THE DEFENDANT:  Thank you.

23          THE COURT:  Okay.  Do you understand you have a

24  right to have a jury of your peers drawn from the residents

25  of the district and that you would get help from Mr. Messing

1  in selecting a jury?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that in order to find

4  you guilty, the verdict of the jury must be unanimous.  That

5  is, all 12 jurors must agree that the Government has proven

6  you guilty beyond a reasonable doubt?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you understand that if you or Mr.

9  Messing wanted to, you could obtain a subpoena or court order

10  to make witnesses come to court and testify at trial on your

11  behalf?

12          THE DEFENDANT:  Yes, yes.

13          THE COURT:  And do you also understand that if

14  you're found guilty, you could appeal such a finding to a

15  higher court, which could set aside or modify your finding of

16  guilt and give you a new trial?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And by pleading guilty here today,

19  you're not going to have that option?

20          THE DEFENDANT:  Mm-hmm, I understand that, yes.

21          THE COURT:  All right, do you understand at trial,

22  you'd have a right to confront and cross-examine witnesses.

23  That is, you'd have a right to be in the courtroom and face

24  your accusers, in this room and challenge their version of

25  events and try to convince a jury that they are not credible

1    and should not be believed?

2              THE DEFENDANT:  I understand that, yes.

3              THE COURT:  Okay, do you understand that at trial,

4    you do not have to testify or take the witness stand, if you

5    don't want to?

6              THE DEFENDANT:  Yes.

7              THE COURT:  No one can force you to testify if you

8    don't want to do that.  Do you understand that?

9              THE DEFENDANT:  Yes, yes, your Honor.

10             THE COURT:  All right and the prosecutor, in this

11   case, could not make any comments or make any reference to

12   your failure to testify?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand that by entering this

15   guilty plea, there will be no trial and you're giving up any

16   of the rights I've just told you about by admitting your

17   guilt?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  All right.  Now, one other thing I want

20   to talk to you about.  I don't know the status of your job at

21   Boeing, but do you understand that guilty plea may or may not

22   impact whether you get your job back?

23             THE DEFENDANT:  I understand that, yes.

24             THE COURT:  Because I can't guarantee you, either

25   way, that Boeing will hire you if you're convicted of this

1    offense.

2              THE DEFENDANT:  I understand that, yes.

3              THE COURT:  Okay, now, in order to prove you guilty,

4    the Government would have to prove the following elements.

5    That's a legal term for what the charges the Government would

6    have to prove, to prove a violation of Title 21, United

7    States Code, Section 846.  They would have to prove that you

8    intended to commit the crime of illegally possessing a

9    controlled substance.  In this case, a mixture or substance

10   containing a detectable amount of Oxycodone and that

11   thereafter, you did an act constituting a substantial step

12   toward the commission of that crime, which strongly

13   corroborates your criminal intent.

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  All right.  Ms. Lunkenheimer, could you

16   briefly summarize for Mr. Wilson, the facts that you would

17   offer and Mr. Wilson, what I want you to do now, is I want

18   you to listen to Ms. Lunkenheimer and after she's done, I'm

19   going to ask you if what she said was accurate and if you did

20   everything she says she claims she can prove.

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And if you have any questions about that

23   --

24             THE DEFENDANT:  No, I don't.

25             THE COURT:  -- you can take a break and speak to Mr.

14

1   Messing.

2           MS. LUNKENHEIMER:  If this case were to proceed to

3   trial, the Government would introduce evidence through

4   witnesses and documentary exhibits which would establish the

5   following.  That on September 9, 2011, the defendant met with

6   an individual cooperating with the Government, inside a

7   building on the Boeing Company's Ridley Park, Pennsylvania

8   campus.  That Ridley Park, Pennsylvania campus being in the

9   Eastern District of Pennsylvania.  There, the defendant

10  bought five placebo Oxycontin 40 milligram tablets from the

11  cooperating individual for $100.

12          THE COURT:  Okay, is that accurate, what she said,

13  dir?

14          THE DEFENDANT:  Yes, yes, your Honor, yes, it is.

15          THE COURT:  Okay and you did all those things?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right, thank you.  Do you now want

18  to change your plea from not guilty to guilty?

19          THE DEFENDANT:  I would like to plead guilty, yes.

20          THE COURT:  Okay, all right, why don't we do that?

21  Kristen, do you want to take the plea?

22          THE DEPUTY CLERK:  William Wallace Wilson, you

23  heretofore pleaded not guilty in Criminal Information Number

24  11-571, charging you with Count 1, attempted possession of

25  Oxycodone, in violation of 21, United States Code, 846.  How

15

1  say you as to Count 1 of the information, guilty or not

2  guilty?

3        THE DEFENDANT:  Guilty.

4        THE COURT:  All right, sir, thank you, you can be

5  seated.

6        THE DEFENDANT:  Thank you.

7        THE COURT:  All right, I'm going to find that Mr.

8  Wilson is fully alert, competent and capable of entering an

9  informed plea.  That his plea is a knowing and voluntary plea

10 supported by an independent basis in fact, containing each of

11 the essential elements of the offense pled to and defendant's

12 guilty plea is therefore accepted and he is now adjudged

13 guilty of the offense charged in the information.

14       I'm going to order that the probation office prepare

15 a pre-sentence report and that the defendant and Mr. Messing,

16 I'd urge you to cooperate with the pre-sentence investigation

17 and give them all of the information they need to help,

18 because it's designed to help me get a true picture of you

19 and your life, so I can figure out an appropriate sentence at

20 that time.

21       THE DEFENDANT:  Yes, your Honor.

22       THE COURT:  And you'd have Mr. Messing present with

23 you, if you want, when you're interviewed by the probation

24 office.  And I'd like, if there's any objections, that the

25 defense and the prosecution to sit down with the probation

1    officer and address those objections before sentencing.  If

2    not, I'll resolve that at the time of sentencing.

3            Now, did Ms. Settles discuss a date with your folks

4    for sentencing?

5            MR. MESSING:  Not a specific date, but we'll be

6    available at the Court's convenience.  What did the Court

7    have in mind?

8            THE COURT:  Well, October 4th at 10:00 a.m.

9            MR. MESSING:  I'm opening up my little device.

10           THE COURT:  We can change that if that's

11   inconvenient for anyone.

12           MR. MESSING:  That's good for me, actually.

13           MS. LUNKENHEIMER:  That's fine, your Honor.

14           THE COURT:  Mr. Wilson, is that good for you?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Okay, that will give the pre-sentence --

17   the probation officer time to get the pre-sentence report

18   ready.  Mr. Messing, also, there is a hearing, I don't know

19   if you're aware of it --

20           MR. MESSING:  Yes.

21           THE COURT:  -- on the 11th.

22           MR. MESSING:  Yes.

23           THE COURT:  Is that something you're going to be

24   pursuing?

25           MR. MESSING:  Yes, if I could explain?

1          THE COURT:  Sure, you can be seated, sir.

2          THE DEFENDANT:  Thank you.

3          MR. MESSING:  I have waited until this hearing to

4    file the motion under 3607, because I felt that it wasn't

5    ripe until he was actually adjudicated guilty.

6          THE COURT:  Right.

7          MR. MESSING:  And I have it with me today, in hard

8    copy and will file it electronically later.  The problem is

9    that I've just learned that the hearing on this issue is set

10   for July 11th.

11         THE COURT:  Yes.

12         MR. MESSING:  On July 9th, I begin what promises to

13   be a lengthy hearing before Judge Yohn, in a case where I

14   represent the plaintiffs in a civil rights action to bar the

15   city from enforcing a ban on providing food to the homeless

16   on the Benjamin Frankly Parkway.

17         THE COURT:  I've read about that.

18         MR. MESSING:  Yes, I don't know how long that will

19   take.  I may be available.  I've spoken to Ms. Lunkenheimer

20   about this and I understand that the Government intends to

21   introduce certain evidence.  I will try to be there.

22         THE COURT:  Okay.

23         MR. MESSING:  What I would ask the Court to consider

24   is if I can't be there, if I'm still before Judge Yohn, I

25   believe, based on what I'm hearing, that I will be able to

1    stipulate to much of this evidence.  There are a number of

2    very experienced defense attorneys who will be there and I

3    think that if I'm not able to be there, I will be able to

4    enter into a stipulation with the Government to much of the

5    evidence.  And then the Court is going to make a decision, I

6    think, based on that evidence and there's going to be a great

7    deal of commonality of issues between Mr. Wilson and the

8    others and the Court's going to make a decision.

9        So what I'm asking the Court is to grant me leave to

10   not be there in the event that I'm still before Judge Yohn.

11       THE COURT:  Sure, sure.  And as you said, we're

12   going to have probably seven or eight very experienced

13   lawyers here and can cross-examine the Government witnesses

14   and make the record that needs to be made.

15       MS. LUNKENHEIMER:  Yes, your Honor and this is, as

16   everybody knows, not the final sentencing hearing for this

17   defendant.  So the defense is certainly open to making

18   arguments about the application provision at his own

19   individual sentencing hearing.

20       MR. MESSING:  Exactly and I -- I don't know what the

21   Court's intent is in terms of making a decision on these

22   motions, on the spot or deferring them or holding them over.

23       THE COURT:  I think what I was -- it's an unusual

24   issue --

25       MR. MESSING:  It is.

1          THE COURT:  -- you know, one that I don't think any

2     of us have any experience with.

3          MR. MESSING:  I can speak for myself and represent

4     to the Court that I hadn't even heard of this provision until

5     fairly recently.

6          THE COURT:  Nor did I.  So what I plan to do is hear

7     the testimony and hear the arguments and then issue a ruling

8     sometime before all the sentencings begin, because I want

9     everybody to know where they stand before the different

10    sentencings.

11         MR. MESSING:  I think that's completely appropriate.

12         MS. LUNKENHEIMER:  And your Honor and then maybe at

13    the hearing, after the hearing, we should discuss with other

14    defense counsel, as I told Mr. Messing and as the Court

15    probably anticipates, we intend to present two types of

16    evidence.  Evidence that is specific to each of the

17    individuals that is seeking relief under the provision and

18    then also evidence that is common to all of them.  So it may

19    be true that some individuals don't quality for the provision

20    because it's, you know, there are unique things about each

21    individual and whether they qualify.  And then there is

22    general arguments that we're making that none of the

23    individuals should also receive this.  So perhaps then we

24    should end up with the briefings, some sort of, you know, any

25    argument for each individual prior then to when the actual

1  sentencing hearing is made.  I'm not quite sure how you would

2  want to do that.

3          THE COURT:  Well, I was hoping to do that, that day.

4          MS. LUNKENHEIMER:  Oh, okay.

5          THE COURT:  But in Mr. Messing's case, if he can't

6  be there, I'm sure he can submit something in writing or

7  something.

8          MS. LUNKENHEIMER:  Okay.

9          MR. MESSING:  Yes, I mean, quite frankly, there's a

10 dearth of decision on that, on the issue.

11         THE COURT:  Right.

12         MR. MESSING:  I've done some research and I think

13 the law is pretty clear that this is -- pretty much rests in

14 the sound discretion of the sentencing court.

15         THE COURT:  Right.

16         MR. MESSING:  The evidence will be what it will be.

17         MS. LUNKENHEIMER:  Well, then that's perfect.  I'm

18 glad to have that clarification actually, for us, with the

19 other hearings and then it may make sense if Mr. Messing

20 isn't there, that he have the opportunity to review the

21 transcript and then --

22         THE COURT:  Sure.

23         MS. LUNKENHEIMER:  -- and then file something,

24 because he won't be there to make argument.

25         THE COURT:  And what time are starting on the 11th?

1           MS. LUNKENHEIMER:  I believe it's 9:30.

2           THE COURT:  Okay.

3           MS. LUNKENHEIMER:  And we may be done.

4           THE COURT:  Okay.

5           MR. MESSING:  It depends on how long Mayor Nutter is

6    on the witness stand, frankly.

7           THE COURT:  And in terms of specific harm the

8    hearing that Mr. Messing should be here for, maybe we can try

9    to accommodate your schedule and get you a break from Judge

10   Yohn.

11          MR. MESSING:  I'll talk to Ms. Lunkenheimer.

12          THE COURT:  Okay, great.

13          MR. MESSING:  We'll see if we can figure that out.

14          THE COURT:  Excellent.

15          MS. LUNKENHEIMER:  That's helpful, thank you, your

16   Honor.

17          MR. MESSING:  Thank you, sir.

18          THE COURT:  All right, thank you.  Now, Mr. Wilson,

19   I just want to talk to you.  I read the pre-sentence kind of

20   summary of how things have been going and I want to make sure

21   you're getting all the help you need.

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Because I know this is a difficult thing

24   that you're trying to overcome in your life.

25          THE DEFENDANT:  Thank you.

22

1          THE COURT:  So just talk to me candidly, are you

2    having any issues or is there anything else that I can

3    arrange for pre-trial services to do to help you, you know,

4    maintain your ability to stay off these drugs and get you the

5    counseling and the support that you need?

6          THE DEFENDANT:  Pre-trial has been real fair to me.

7    Everything I ask for they gave to me.  Right now, I'm on

8    unemployment, you know.

9          THE COURT:  Right.

10         THE DEFENDANT:  But I don't know how all that's

11   going to affect what -- if I don't get back to Boeing, I'm

12   going to have to seek employment somewhere -- if I don't go

13   to jail, I guess, I don't know.

14         THE COURT:  Okay.

15         THE DEFENDANT:  They have me restricted to

16   Pennsylvania and Delaware.  I'm a truck driver by trade, your

17   Honor and it's a little hard to go to a place of employment

18   and say, I'm not allowed, you know, I'm not allowed to leave

19   Pennsylvania or Delaware.

20         THE COURT:  Okay.

21         THE DEFENDANT:  So I don't know if that's the time

22   to bring it up or not.

23         THE COURT:  Well, no, I think, why don't we do this.

24   If you get a position that you need to travel interstate,

25   then we can address that.

23

1          THE DEFENDANT:  Okay.

2          THE COURT:  Do people ask you that question in a job

3    interview?

4          THE DEFENDANT:  Well, you know, when a truck driver,

5    CDLs, you know --

6          MR. MESSING:  Yes, it's kind of a fundamental

7    question.

8          THE COURT:  Would you have any objection if he were

9    to obtain employment and would he be allowed to leave the

10   state?

11         MS. LUNKENHEIMER:  Probably not, no.

12         THE COURT:  Okay.

13         MS. LUNKENHEIMER:  I can't imagine that we would if

14   he wanted to obtain employment, that's, you know.

15         MR. MESSING:  Let me also try to address a question

16   that the Court has just asked.  When all of this happened and

17   I don't want to go into a whole long story, but obviously,

18   Mr. Wilson and I think others, are similarly situated.  He's

19   had lots of on the job injuries at Boeing over the years.

20         THE COURT:  Right.

21         MR. MESSING:  He's had surgery, has had pain pill

22   injections.

23         THE COURT:  Yes.

24         MR. MESSING:  And has been on medication, which is

25   how, of course, he got into this fine mess.

24

1          THE COURT:  Right.

2          MR. MESSING:  He went cold turkey after he was

3    notified of these charges.  The pre-trial services officer,

4    Juan Luria (ph), has been terrific.  He has gotten him into

5    some counseling.  He had regular urinalysis.  His urinalysis

6    has been clear.  He's gone cold turkey for two reasons.  One

7    that he didn't want to have a positive urine and two, he

8    still feels that he might be able to get his job back.  I

9    don't know how realistic that is, we shall see.

10          So he's in treatment with Elliott --

11          THE DEFENDANT:  Cooperman.

12          MR. MESSING:  Elliott Cooperman, where he goes

13   periodically.  It doesn't sound like very much, where he's

14   being given this generic Zoloft for the depression.  He's not

15   taking pain pills, he's in pain.  He doesn't want to have a

16   hot urine, he wants to get his job back or he wants to be a

17   truck driver.

18          THE COURT:  And you're not using Suboxone?

19          MR. MESSING:  What's that?

20          THE COURT:  No Suboxone?

21          MR. MESSING:  I don't think any pill.

22          THE COURT:  Okay.

23          THE DEFENDANT:  No.

24          MR. MESSING:  So, you know, to the extent that

25   pre-trial services feels that he would benefit from

1   additional counseling, he would be happy to cooperate.  He's

2   cooperated with everything.  At this point, he's just sitting

3   at home and trying to get a job.

4           THE COURT:  All right, well, I'll lift the travel

5   restriction, all right, unless the Government objects.

6           MS. LUNKENHEIMER:  For work purposes, if he clears

7   it with pre-trial, that he has a work --

8           THE COURT:  For work purposes.

9           MS. LUNKENHEIMER:  -- right, so that he can

10  represent to a job employer regarding --

11          MR. MESSING:  Appreciate that.

12          THE DEFENDANT:  Thank you, the only reason Delaware

13  is involved is I have a trailer in Delaware.

14          THE COURT:  Okay.

15          THE DEFENDANT:  And that we travel down to Delaware.

16          THE COURT:  So you'll be permitted to travel out of

17  state for work purposes.  So you don't have to tell people

18  you have a travel restriction for that.

19          THE DEFENDANT:  Thank you, sir.

20          MR. MESSING:  Thank you, your Honor.

21          THE COURT:  All right.

22          MS. LUNKENHEIMER:  Your Honor, I just want to say --

23  we were talking about this beforehand and I did talk to

24  someone from pre-trial services right before the hearing.

25  It's my understanding that he is under the care of a

1    psychiatrist, which I think they just told you about.  And

2    therefore, receiving that type of counseling.  Pre-trial

3    services did not, according to them put him into drug

4    specific counseling.  So if he and I asked him beforehand and

5    it's not really my position to do it, but certainly I know

6    that this Court in other cases, and Mr. Wilson should know

7    that, has been very flexible about saying to pre-trial

8    services, please, you know, or not please, because the Court

9    doesn't say it in that way.  But get him counseling for

10   drug-related --

11              THE COURT:  Actually, this Court does say please.

12              MS. LUNKENHEIMER:  He says it like that, but you

13   know, he can say it stronger than that, too.  If you need

14   drug-specific counseling, the Court certainly presents the

15   opportunity to make sure that you get it.  So I just wanted

16   to let you know that, as I understand it, he has not been

17   getting that.  His psychiatrist may be giving it, but it's

18   privately done.

19              THE DEFENDANT:  At this point in time, I have no

20   problem with, you know, I'm not taking no drugs or anything

21   like that.

22              THE COURT:  Yes, but would it help you to kind of

23   talk to people and get some support from professionals in

24   that regard?

25              THE DEFENDANT:  Sure, it couldn't hurt, but this is

1  a pretty big slap in the face for me and I realize that, you

2  know, I may get these things operated on or I'm staying off

3  of it.  You know, if I have to get my knee operated on for

4  work purposes, stuff like that, you know, I will do that, you

5  know.

6           MR. MESSING:  He's a tad stoic, your Honor.

7           THE COURT:  Right, but I don't want you to think

8  that it's a sign of weakness or a problem with your character

9  if you're getting drug counseling, because this is a pretty

10 big demon that you're fighting and the more help you can get,

11 the better.  Especially by people who are trained.  I mean, I

12 admire you doing it cold turkey and you've done great and you

13 should be very proud of that.  But if you think -- you don't

14 have to be alone, you know, you're not walking alone through

15 this.

16          THE DEFENDANT:  No.

17          MR. MESSING:  Can I make a suggestion?

18          THE COURT:  Sure.

19          MR. MESSING:  Perhaps if the Court instructs

20 pre-trial services to determine the need for counseling or

21 treatment for drug-related or mental health issues and then

22 arrange --

23          THE COURT:  Well, they did try mental health

24 counseling and that apparently wasn't --

25          THE DEFENDANT:  I went to a place in Upper Darby

1    twice and I asked Rocky -- I forget his last name.

2          THE COURT:  Rocky Reyes.

3          THE DEFENDANT:  And he told me I could go back to my

4    regular psychiatrist because when I --

5          MR. MESSING:  Dr. Cooperman.

6          THE DEFENDANT:  Elliott Cooperman and when I went

7    there, because I've been on and off this medication for a

8    while, the Zoloft.  So, you know, when I start feeling

9    better, you know, you back down from it, but you know, it's

10   not the way it's supposed to be.  And when I went to see the

11   other psychiatrist in Upper Darby, I wasn't on the

12   medication, I went there twice, your Honor and he didn't give

13   me medication.  It wasn't fraternal services, you know, it's

14   just a psychiatrist.

15         THE COURT:  Mm-hmm.

16         THE DEFENDANT:  And you know, I'm shaking, I need

17   some medication and he said, well, we've got to talk some

18   more.  And that's when I called Rocky up and I said can I go

19   back to my other doctor and he seen me right away.

20         THE COURT:  Okay.

21         THE DEFENDANT:  And prescribed Zoloft.

22         MR. MESSING:  It sounds to me like he could benefit

23   from some intervention.

24         THE COURT:  All right, what I'm going to do -- I'm

25   going to do this, I'm going to enter an order remanding your

1    bail conditions to eliminate the travel restriction for work

2    and directing pre-trial services to find you appropriate drug

3    treatment counseling.

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  All right, that's unrelated to the

6    mental health.  You can stay with your own psychiatrist for

7    the mental health stuff.  But this is particularly for drug

8    treatment.  People --

9              THE DEFENDANT:  No, I can deal with it.  I've been

10   to rehab --

11             THE COURT:  Okay.

12             THE DEFENDANT:  -- and all, I'm not scared, you

13   know, it was something that went wrong that I had to take

14   care of, you know.

15             THE COURT:  Okay, all right, anybody object to that?

16             MS. LUNKENHEIMER:  No, your Honor.

17             MR. MESSING:  Of course not.

18             THE COURT:  Okay, any other suggestions?

19             MS. LUNKENHEIMER:  No, your Honor.

20             MR. MESSING:  No, sir.

21             THE COURT:  All right, anything else we have to do

22   today?  All right, thanks, everybody and good luck to you,

23   Mr. Wilson.  Thank you, try and keep up the good work, all

24   right?

25             THE DEFENDANT:  Thank you, you've been real kind

1  today and explained everything here.

2          THE COURT:  My pleasure.

3          THE DEFENDANT:  Thank you, sir.

4          THE COURT:  Nice to meet you.  Thanks, Ms.

5  Lunkenheimer.  All right, we're adjourned.  Have a good day,

6  everyone, enjoy the rest of the summer.

7          (Proceeding adjourned 11;04 o'clock a.m.)

8                          *  *  *

CERTIFICATION

        I hereby certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.




s:/Geraldine C. Laws, CET              Dated 9/19/12
Laws Transcription Service