# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| V. | : CRIMINAL NO. 11-571 |
| WILLIAM WALLACE WILSON | : |

## DEFENDANT'S SENTENCING MEMORANDUM

**I.     INTRODUCTION**

This case presents a compelling sentencing issue. William Wallace Wilson is 55 years old and has no prior criminal record. He worked at the Boeing Company in Ridley Park for nearly three decades, following his father who spent his adult work life at Boeing. A series of job-related injuries left him with chronic back, shoulder and leg problems and persistent pain. He sought medical attention on a regular basis and, at one point, received cortisone injections to help alleviate the pain. The problem never abated. Mr. Wilson started using pills for the pain which he secured illegally and by prescription. An undercover police operation at Boeing – the nature and scope of which is well known to this Court – led to a one-count information charging Mr. Wilson with attempted possession of oxycontin, in violation of 21 U.S.C. §§846 and 844. We reference these facts to provide context to his crime, not as an excuse or justification. To be clear, Mr. Wilson well knows that he committed a crime, fully accepts responsibility, and deeply regrets his misconduct.

Since his arrest, Mr. Wilson has been laid off by Boeing, has stopped using pain pills, and has sought work under circumstances that will make it almost impossible for him to secure comparable employment, if any job at all. He has accepted responsibility for his misconduct,

fully cooperated with Pretrial Services over the past year, entered a guilty plea, started substance abuse counseling, and now stands before the Court for sentencing.

The Guideline range in this case, based on a total offense level of 6 and a criminal history category of I, is 0 to 6 months. The defendant has filed a Motion for Pre-Judgment Probation Pursuant to 18 U.S.C. §3607(a).

The question before the Court is whether any incarceration, or a disposition that results in a permanent record of a criminal conviction, serves the interests of the community and the defendant, and advances the basic principles of our sentencing laws. The Presentence Investigation Report (PSI) contains considerable biographical information about Mr. Wilson, his personal history, family, educational and employment background, and the details of the case currently before the Court. The purpose of this Sentencing Memorandum is to offer reasons why the Court should impose a sentence of pre-judgment probation under §3607(a). In light of recent developments emphasizing the importance of evidence-based sentencing, and the recognition in the federal criminal justice system that alternatives to incarceration and a permanent criminal conviction should be carefully considered, a sentence under §3607(a) is entirely appropriate in this case. Indeed, based on the careful analysis of this issue by this Court in an Opinion issued on August 1, 2012, in *United States v. Duris, et al.* (E.D.Pa. 11-CR-573), Mr. Wilson qualifies for pre-judgment probation under §3607(a).

## II. SENTENCING ARGUMENT

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, this Court has wide-ranging discretion to determine an appropriate sentence. The Court's sentencing considerations are governed by the factors set forth in 18 U.S.C. §3553(a) and the guiding principle that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In line with §3553(a), "[a] sentencing court should 'consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.'" *United States v. Gunter*, 527 F.3d 282, 285 (3d Cir. 2008) (quoting *Gall v. United States*, 128 S. Ct. 586, 597-98 (2007)), *vacated on other grounds*, 129 S. Ct. 2051 (2009). The Court's determination of a sentence requires the exercise of "discretion by considering the relevant 18 U.S.C. §3553(a) factors in setting the sentence…regardless whether it varies from the sentence calculated under the Guidelines." *Id.* (quoting *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)).

### A. Pre-Judgment Probation Under 18 U.S.C. §3607(a)

In this Court's Opinion in *United States v. Duris, et al.*, the nature, scope and applicability of a sentence under 18 U.S.C. §3607(a) was carefully scrutinized.[1] As found by the Court, eligibility for pre-judgment probation is determined by the requirements of §3607(a), the standards set forth in §3553(a) and *United States v. Voelker*, 489 F.3d 139, 155 (3d Cir. 2007), and a defendant's performance on pretrial supervision. *Duris* at 10. As this Court reasoned, the

---

[1] As provided in 18 U.S.C. §3607(a), a defendant may be sentenced, in the court's discretion, to pre-judgment probation where he has been found guilty of a misdemeanor drug offense, has never been previously convicted of a drug offense under federal or state law, and has not previously received probation under §3607(a). See PSI at paragraph 57.

3

circumstances of certain of the offenders involved in the Boeing investigation render a sentence under §3607(a) appropriate.

Applying those standards to William Wallace Wilson demonstrates that he qualifies for pre-judgment probation.

First, Mr. Wilson has never previously been arrested.[2]

Second, he has worked at Boeing for nearly 30 years, most recently as a forklift truck driver.

Third, Mr. Wilson has diligently complied with all requirements of pretrial supervision for more than one year. He has provided no less than 20 urinalyses to the Pretrial Services Office. All have been negative with the exception of the first analysis that was submitted shortly after his arrest while Mr. Wilson was still taking pain pills. See PSI at paragraph 5. He immediately stopped the use of all medication.

Fourth, Mr. Wilson has incurred no serious infractions in his nearly 30 years at Boeing.[3]

Fifth, Mr. Wilson's drug use, and his involvement in the current offense, can be directly traced to the need to alleviate the chronic pain he suffers from work-related injuries sustained

---

[2] Mr. Wilson has absolutely no prior criminal record. Thus, he has no long-term exposure to criminal activity, nor has he been "hardened" by time in prison custody. These considerations render him someone who has a far greater likelihood of being reformed. *See United States v. Collington*, 461 F.3d 805, 808-09 (6th Cir. 2006). Further, Mr. Wilson has made clear that he deeply regrets his conduct. S*ee United States v. Howe*, 543 F.3d 128, 137-39 (3d Cir. 2008) (affirming consideration of defendant's remorse in order to mitigate sentence as appropriate under §3553(a)).

[3] The Government recently provided the defense with Mr. Wilson's "disciplinary file" from Boeing. The file includes: 1) a one-day suspension in 1996 for leaving for lunch 30 minutes early; 2) a suspension in 2007 for leaving the workplace without authorization and lying about it to the investigator; and 3) written warnings in 2011 for "poor attendance" based on missing two full days and four half-days in December 2010.

during his employment at Boeing.[4] This is not meant to excuse his unlawful behavior, which Mr. Wilson knows full well was wrong and for which there can be no justification. Rather, it is offered for the limited purpose of explaining the circumstances that led to his drug problem.

Sixth, Mr. Wilson "cold-turkeyed" the use of pain pills after his arrest. Initially, Pretrial Services did not find, under the circumstances, that he was in need of drug treatment. At the suggestion of the Court, the issue was revisited with Pretrial Services and Mr. Wilson was referred to Holcomb Behavioral Heath for substance abuse counseling where he now participates in bi-monthly counseling sessions.

In summary, an analysis of the factors approved by this Court for determining eligibility under §3607(a), strongly supports Mr. Wilson's suitability for pre-judgment probation. Much like Mr. Duris and Mr. Phillip, he was a long-term Boeing employee with no serious disciplinary infractions,[5] has no prior criminal record, had been a user of the pain pills and not involved in sale for redistribution,[6] and has fully complied with all terms and conditions of Pretrial Services.

---

[4] Mr. Wilson used percocet, oxycontin and xanax to alleviate his pain. Percocet and oxycontin are widely prescribed pain relief medications. See www.nlm.nih.gov. While xanax is prescribed mainly to relieve anxiety disorders, it is also commonly used for pain relief. *Id*.

[5] As in the case of Mr. Duris, he was once suspended for lying or falsifying records. In fact, Mr. Duris incurred two separate suspensions. Such disciplinary infractions over an extended period of employment, as found by this Court, do not disqualify a defendant for consideration under §3607(a).

[6] Mr. Wilson was not involved in the sale of illegal drugs for the redistribution to others. However, over a five year period there were occasions when the individual cooperating with the government ("CS") – whom Mr. Wilson knew as a friend for more than twenty years and was Mr. Wilson's source of illegal pills – told Mr. Wilson that he was in pain and out of pills. On two or three occasions, Mr. Wilson agreed to sell him part of his own prescription medication. It was Mr. Wilson's intent to help a friend in need, and not to sell drugs for redistribution to others. Mr. Wilson nevertheless deeply regrets his actions, which were wrong, and takes full responsibility.

There is no dispositive evidence that distinguishes Mr. Wilson from either Mr. Duris or Mr. Phillip in terms of suitability for prejudgment probation.

On the other hand, there is substantial evidence that distinguishes Mr. Wilson from the two defendants, James Swan and Michael Patterson, who were denied pre-judgment probation.[7] Unlike these defendants, Mr. Wilson has absolutely no prior arrest record,[8] had no recent disciplinary infractions,[9] has substantially complied with the terms and conditions of pretrial supervision,[10] had been a long-term Boeing employee,[11] and had not abused drugs while occupying a leadership position at Boeing.[12]

The imposition of pre-judgment probation under §3607(a) presents a defendant with the exceptional opportunity to seek dismissal of the charges upon the successful completion of all terms and conditions of the probationary sentence. For a defendant such as William Wallace Wilson, this opportunity will have a defining impact on his ability to seek gainful employment and to get his life back on track.

---

[7] The evidence regarding Mr. Swan and Mr. Patterson, as found by this Court, militated against consideration for a disposition under §3607(a). *Duris*, at 12-14.

[8] Mr. Swan was given a diversionary program for a DUI arrest in 2009. Mr. Patterson was arrested for possession of marijuana in 1992 and also received a diversionary program.

[9] Mr. Swan had two disciplinary write-ups in the past two years.

[10] Mr. Swan presented "hot" urines throughout the period of pretrial supervision, and Mr. Patterson tested positive for marijuana during pretrial supervision.

[11] Mr. Swan worked for Boeing for only 3 years.

[12] Mr. Patterson occupied a leadership position in the UAW at Boeing.

### B. Pre-Judgment Probation Supported By 3553(a) and Developments in Federal Sentencing Law

The Supreme Court's recent sentencing decisions look at the guidelines with scrutiny and give due consideration to alternatives that the guidelines fail to consider as required by §3553(a), particularly where individual defendant characteristics or alternative sentencing options are ignored. *Rita v. United States*, 127 S. Ct. 2456, 2465, 2468 (2007); *see also Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007) (ruling that district courts may vary from the guidelines based on policy considerations). Critically, as found by this Court in *Duris*, at 3, a sentence should carefully consider the principle of individualized sentencing, a concept that is central to the core tenets of our criminal justice system.

Underlying the shift of focus in federal sentencing practice is the recognition, through evidence-based research conducted by the Sentencing Commission and academics in the correctional field, that in many cases incarceration is simply not effective at meeting the goals of sentencing. If the most basic purpose of sentencing is to prevent the offender from committing further crimes, then, according to data compiled by the Commission, this is the area where sentencing policy has had its most basic failure. As the Commission has found, "[o]ffenders are *most* likely to recidivate when their sentence is straight prison, as opposed to probation or split sentences." U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 13 (May 2004) ("*Measuring Recidivism*") (emphasis added).[13] Data collected by the Bureau of Justice Statistics also show that, significantly, for nonviolent offenders sentenced to prison, their time in prison may increase the severity of future criminality. *See* U.S. Dept. of Justice, Bureau of Justice Statistics Fact Sheet,

---

[13] *Available at*: http://www.ussc.gov/publicat/Recidivism_General.pdf

*Profile of Nonviolent Offenders Exiting State Prisons* at 2 (Oct. 2004)[14] (noting that "[a]mong nonviolent releasees, about 1 in 5 were rearrested for a violent crime within 3 years of discharge").

Beyond the fact that incarceration increases future criminality, prison sentences undermine the purposes of sentencing in other respects. Prison prevents the offender from satisfying restitution orders and other financial obligations, 18 U.S.C. § 3553(a)(7), and, critically, impedes the offender's ability, on release, to obtain employment and become a productive member of the community, 18 U.S.C. § 3553(a)(2)(D). *See* Pew Center on the States, *One in 100: Behind Bars in America 2008* at 13 (Feb. 2008)[15] ("If they have a job at all, prisoners are typically unable to earn more than a very low wage, making it unlikely they will pay much, if anything, in child support, victim restitution, or taxes."); Doug McVay et al., *Treatment or Incarceration: National and State Findings on the Efficacy of Cost Savings of Drug Treatment Versus Imprisonment* at 3 (Jan. 2004) ("*Treatment or Incarceration*")[16] ("[E]ven a short period of incarceration has been shown to affect people's earnings and ability to get a job, to be parents, and to become productive parts of their communities.").

In the final analysis, recent developments in federal sentencing law underscore the lack of a sound rational basis for a prison sentence in this case and, importantly, support the imposition of pre-judgment probation.

---

[14]  *Available at*: http://74.125.155.132/scholar?q=cache:olAjcoyk1mMJ:scholar.google.com/&hl=en&as_sdt=8

[15]  *Available at*: http://www.pewcenteronthestates.org/report_detail.aspx?id=35904

[16]  *Available at*: http://www.justicepolicy.org/images/upload/04-01_REP_MDTreatmentorIncarceration_AC-DP.pdf

**III.    CONCLUSION**

For all of the foregoing reasons, the defendant, William Wallace Wilson, respectfully requests that the Court impose a sentence of pre-judgment probation under 18 U.S.C. §3607(a).

Respectfully submitted,

 S/ Paul Messing
Paul Messing
I.D. No. 17749
KAIRYS, RUDOVSKY, MESSING & FEINBERG
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
(215) 925-4400
(215) 925-5365 (fax)

*Counsel for William Wallace Wilson*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : 

V. : CRIMINAL NO. 11-571

WILLIAM WALLACE WILSON : 

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, Defendant's Sentencing Memorandum was filed via the Court's CM/ECF system, is available for viewing and downloading, and, as such, were served upon the below counsel. Additionally, paper copies of the Sentencing Memorandum has been served via email on the below counsel and Probation Officer:

> Ashley Lunkenheimer, Esq.
> Faith Moore Taylor, Esq.
> Assistant U.S. Attorney
> 615 Chestnut Street, Ste. 1250
> Philadelphia, PA  19106-4476
>
> Joseph Petrarca
> U.S. Probation Officer
> 600 Arch Street, Suite 2400
> Philadelphia, PA  19106

 S/ Paul Messing
 Paul Messing