## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

    V.                       :          Criminal No.  11-571

WILLIAM WALLACE WILSON          :

**GOVERNMENT'S SENTENCING MEMORANDUM AND
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SPECIAL PROBATION
PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3607**

As stated in the government's initial memorandum in opposition to the

defendant's motion for special probation, see Dkt. # 30 (incorporated herein), the defendant,

William Wallace Wilson, should be deemed ineligible for relief under section 3607 because in

addition to being a illicit user of prescription medications at The Boeing Company's Ridley Park

plant, he supplied Percocet and Xanax pills to one of the largest distributors at the plant and

abused Boeing's confidential drug addiction assistance program by lying to Boeing Company

officials about having a drug problem at a time when he did not have one so that he could not get

fired for sneaking out of work.  Moreover, as the tape of the defendant's drug purchase shows,

he used the prescription medications he illegally purchased while performing his job as an

operator of heavy machinery at the plant.

In consideration of the defendant's lack of criminal history and need to pursue

drug treatment and obtain a G.E.D., the government respectfully requests that the Court fashion

a sentence under the guidelines that affords him those opportunities.  But this defendant is not an

appropriate candidate for the special probation provisions of Title 18, United States Code,

Section 3607: Unlike the two defendants who were granted Section 3607 relief, this defendant

bought pills consistently from another Boeing employee for approximately four to five years;

there is direct evidence that the defendant used the pills at work – he does so during the undercover sale that forms the basis of the instant charge; the defendant not only failed to avail himself of the confidential drug treatment program offered by Boeing, but willfully misused the program to avoid taking responsibility for his own inappropriate actions; and the defendant admits that he was a seller (albeit infrequently, but a seller nonetheless) of pills at Boeing. Accordingly, the government respectfully requests that the Court deny the defendant's 3607 motion and sentence the defendant to a guideline sentence.

## I.   BACKGROUND

On June 26, 2012, the defendant pled guilty to Count One of the information charging him with attempted possession of oxycodone, in violation of Title 21, United States Code, Section 846.  The charge stems from his attempt on September 9, 2011, to illegally purchase five Oxycontin 40mg pills from an individual cooperating with the government inside of a building on The Boeing Company's Ridley Park campus.

## II.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence

According to the Probation Office, the Court may impose a sentence of one year imprisonment, a year of supervised release, a $100,000 fine, and a $25 special assessment.[1]

### B.   Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

> Base offense level based on attempted possession of controlled substances, 21 U.S.C. § 844, under U.S.S.G. § 2D2.1:   **8**

---

[1]   The potential fine of $100,000 is different from the fine that the parties understood could be imposed at the time of the defendant's change of plea hearing – it was the parties understanding that the maximum fine that could be imposed was $1,000 per count of conviction. The special assessment is also different in that it is $25 instead of $100.

Adjustment for acceptance of responsibility, under U.S.S.G. § 3E1.1(a)        **- 2**

**TOTAL OFFENSE LEVEL**                                                               **6**

The defendant has a Criminal History Category of I because he has no prior convictions. PSR ¶¶ 24-25.   Accordingly, with a total offense level of 6 and a criminal history category of I, his guidelines range is **zero to six months imprisonment**.  Pursuant to Title 18, United States Code, Section 3561(c)(2), the defendant is eligible for up to five years of probation, and the guidelines provide that the Court may require as a condition of probation up to six months of intermittent confinement, community confinement, or home detention.  PSR ¶¶ 55-56.

## III.     DISCUSSION OF THE SENTENCING FACTORS

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[2]  In this case, the government believes that special probation is not warranted and that

---

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

the Court should sentence the defendant to a guideline sentence that takes into consideration his

drug addiction and need for educational training.

> A.    **Nature and Circumstances of the Offense and History and Characteristics of the Defendant.**

The government explained at length in its prior written submission and witness

testimony both the profoundly dangerous nature of the controlled substance that the defendant

used and sold at Boeing – oxycodone – and the potential devastating impact of its use during the

manufacture of the V-22 Osprey and Chinook.  The parties have also reached a stipulation, in

lieu of additional testimony, about the defendant's drug activities while working at Boeing:

> The parties agree and stipulate that the defendant, William Wallace Wilson, purchased Percocet, OxyContin and Xanax pills from an individual cooperating with the government (the "CS") for approximately four to five years prior to his arrest in this case. The defendant would purchase approximately one to two pills at a time from the CS and told the CS that he was doing so to hold him over until he received his next prescription from his doctor.  While there is a dispute as to specific details, it is agreed that on two to five occasions over that four to five year period, the defendant sold part of his Percocet and Xanax prescriptions to the CS.  The defendant does not recall the total number of pills he sold to the CS and reports that he sold the pills to the CS when the CS told the defendant he was out of pills and was in pain.  The CS disputes that the pills were sold to the CS for this purpose.  The CS reports that when the defendant sold part of his prescriptions to the CS, the defendant sold approximately 80-100 Percocet pills for $8 per pill, and 50-60 Xanax pills for $2-3 per pill.  The defendant's recollection is that it was significantly less.
>
> The last time the defendant sold part of his prescription to the CS was within a year of his arrest.  In the recording of the transaction between the defendant and the CS on September 9, 2011, the defendant can be seen ingesting one of the Oxycontin 40mg pills that he purchased from the CS on The Boeing Company's Ridley Park, PA campus.

---

paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the 'not greater than necessary' language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

For the reasons contained in this stipulation as well as on the record, the defendant is unlike the two other Boeing misdemeanor defendants to whom this Court has granted Section 3607 relief: He bought pills consistently from another Boeing employee for approximately four to five years; he used the pills at work; and he was a seller of pills at Boeing.

Strikingly, in addition to his 2007 falsification of time records and false statements to a Boeing investigator, he abused Boeing's drug treatment program in a manipulative and self-serving way.  As the Court is aware, The Boeing Company's medical coverage includes drug treatment and counseling, and the company's Employee Assistance program offers employees confidential access to drug counselors and inpatient and outpatient drug treatment.  As government witnesses explained to the Court, anyone working at Boeing could get drug treatment offered by the medical plan at no cost to the employee, without a manager even being notified that the employee had a drug problem, and while receiving disability benefits in lieu of salary.  Further, if an employee was in the process of being disciplined for work-related infractions and that employee notified Boeing management that the genesis of their problems was drug addiction, Boeing would offer them treatment that, if successful, would allow them to retain their employment.  Here, the defendant admits to abusing this generous program in a distasteful way.  He informed the Probation Officer that his 2005 time in an inpatient facility for substance abuse issues was not because he had such issues, but because "he got caught sneaking out of work and his union representative instructed him to say that he had a drug problem so that he would not get fired, as drug treatment is the first course of action in those instances."  PSR ¶ 40.  Ironically, when he did develop a substance abuse issue thereafter, the defendant did not avail himself of Boeing's drug treatment program even though he clearly knew that it was available to him.

For these reasons, the government respectfully requests that the Court deny the defendant's motion for Section 3607 relief and sentence the defendant to an appropriate sentence under the guidelines.

**B.**      **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The sentence imposed in this case must fairly punish the defendant for his criminal conduct, and reflect the seriousness of the offense.  Of the Boeing defendants charged with misdemeanors, this defendant is one of the few who the government caught on tape using the controlled substances he purchased from the government cooperator.  He is also in the minority in that at Boeing he sold prescription drugs, had a long history (four to five years) of illegally purchasing drugs, and with the assistance of his union representative, had manipulated Boeing's drug policies to his advantage but not to his assistance.  Because he chose to purchase, sell and use serious and potentially deadly opioids while at work, the government respectfully submits that to give this defendant Section 3607 relief would not reflect the seriousness of his offenses, would undercut respect for the law by those with whom he worked, and would not provide a just punishment for his offenses.

**C.**      **The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

When passing the Sentencing Reform Act, Congress explained:

[It is our] view that in the past there have been many cases, particularly in instances of major white collar crime, in which probation has been granted because the offender required little or nothing in the way of institutionalized rehabilitative measures . . . and because society required no insulation from the offender, without due consideration being given to the fact that the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance. The placing on probation of [a criminal] may be perfectly appropriate in cases in which, under all

the circumstances, only the rehabilitative needs of the offender are pertinent; such a sentence may be grossly inappropriate, however, in cases in which the circumstances mandate the sentence's carrying substantial deterrent or punitive impact.

S. Rep. No. 98-225, at 91-92 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3274-75.

Prescription drug abuse is a "significant threat" in the United States.[3]  The investigation here took a large amount of government resources and, because of the nature of the plant under investigation and the closed culture of its employees, took many years.  Accordingly, a guideline sentence is necessary to afford both specific and general deterrence to criminal conduct.   The government requests that the Court use its discretion to deny the defendant Section 3607 relief and sentence the defendant to a guideline sentence that would assist him with his addiction issues and his need for educational training.

**D.**     **The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

In this case, in light of the defendant's need for substance abuse treatment and educational training, see PSR ¶¶ 41-42, the government requests that the Court to adjust the defendant's sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . ." Section 3553(a)(2)(D).

**E.**     **The Guidelines and Policy Statements Issued by the Sentencing Commission**

As stated earlier, the Guidelines retain their significant importance in advising judges about appropriate sentences.  Uniformity in sentencing should be a paramount goal; in order to rid the criminal justice system of unpredictability and possible bias, like offenders should receive like sentences, to the extent possible.  The only vehicle for achieving such a goal

---

[3]      National Drug Intelligence Center, National Drug Threat Assessment 2005, U.S. Department of Justice, Document ID: 2005-Q0317-003, February 2005 at 99.

is through the application of the Sentencing Guidelines.  Here, the defendant abused his position as a worker at the Boeing plant and put the lives of the men and women serving the United States and other militaries around the world at risk.  His conduct warrants a guideline sentence.

**F.      The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

A guidelines sentence is necessary when considering the importance of avoiding unwarranted sentencing disparities, another factor that is set forth in Section 3553(a). As an initial matter, this Section 3553(a) factor is not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. See United States v. Parker, 462 F.3d 273 (3d Cir. 2006); United States v. Carson, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between co-defendants.'").

**G.      The Need to Provide Restitution to Any Victims of the Offense**

Restitution is not an issue in this case.

**IV.     CONCLUSION**

          For all of the reasons stated above, the government respectfully recommends that the Court deny the defendant's motion for Section 3607 relief and sentence the defendant to a guideline sentence that affords the defendant both drug treatment and educational training opportunities.

          Respectfully submitted,

          ZANE DAVID MEMEGER
          United States Attorney


          _____/s/_____
          FAITHE MOORE TAYLOR
          ASHLEY K. LUNKENHEIMER
          Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I certify that a copy of the GOVERNMENT'S SENTENCING MEMORANDUM has been filed electronically on the Electronic Case Filing system and is available for viewing and downloading from the ECF system, and/or was served by electronic mail on the following defense counsel:

Paul M. Messing, Esq.
Counsel for William Wallace Wilson

_____/s/_____
Ashley K. Lunkenheimer
Assistant U.S. Attorney

Date:  October 1, 2012